# Note

| | | FHA Case No. |
|---|---|---|

**August 17, 2015**          **Pittsburgh**          **PENNSYLVANIA**
*[Date]*                     *[City]*                 *[State]*

**733 Garfield Street**
**Springdale, PA  15144**
*[Property Address]*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **122,735.00**          (this amount is called "Principal"),
plus interest to the order of the Lender. The Lender is **First Niagara Bank, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    **4.000%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **October 01, 2015**  . I will make
these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe
under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items
in the order described in the Security Instrument before Principal. If, on **September 01, 2045,** I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **PO Box 28, Buffalo, NY  14240**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $**585.96**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

20102636
FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

VMP1R (1411)
Page 1 of 4

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **4.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

20102636
FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

VMP1R (1411)
Page 2 of 4

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Grounds for Acceleration of Debt.

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

  (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

  (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

  (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

  (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

20102636
FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

1/15
VMP1R (1411)
Page 3 of 4

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Kevin L Jansen                       -Borrower       Kayla L Boyd                         -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                            -Borrower

*[Sign Original Only]*

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization **First Niagara Bank, N.A.**
NMLS ID ███
Loan originator **Jeani Bello**
NMLS ID | ███

Without Recourse Pay To The
Order of
WELLS FARGO BANK, N.A.
FIRST NIAGARA BANK, N.A.

*Cole W Barkley, Banking Officer*

20102636
FHA Multistate Fixed Rate Note
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

VMP1R (1411)
Page 4 of 4

Allegheny County
**Jerry Tyskiewicz**
Department of Real Estate
Pittsburgh, PA 15219



**** **Electronically Filed Document** ****

---

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

Document Number: 2015-62316

Recorded As:      ERX-MORTGAGE

Recorded On:      August 19, 2015

Recorded At:      08:29:32 am

Number of Pages: 15

Book-Vl/Pg:       Bk-M   Vl-45507   Pg-489

Recording Fee:   $162.00

Parties:

   JANSEN KEVIN L

   MERS AS NOMINEE

Receipt Number: 2956813

Processed By:    Joanna Clark

I hereby certify that the within and foregoing was recorded in the Department of Real Estate's Office in Allegheny County, PA

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**



Tyskiewicz, Director
Fitzgerald, County Executive

Prepared By:

**Tanis Strassburg**
**4224 Ridgelea Road**
**Amherst, NY  14226**

Return To:

**First Niagara Bank, N.A.**
**Residential Mtg - Post Closing,**
**4224 Ridge Lea Road, Amherst, NY**

Parcel Number:

Premises:
**733 Garfield Street**
**Springdale, PA  15144**

---

PURCHASE MONEY      Mortgage

Commonwealth of Pennsylvania                         FHA Case No.

                                                     MIN

THIS MORTGAGE ("Security Instrument") is given on **August 17, 2015**      . The Mortgagor is
**Kevin L Jansen and Kayla L Boyd**

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc.

FHA Mortgage with MERS - PA                          Revised 4/96 Amended 6/02
VMP®                                                 VMP4N(PA) (1302)
Wolters Kluwer Financial Services                    Page 1 of 12

ALL THOSE CERTAIN lots or pieces of ground, Situate in the Borough of Springdale, County of Allegheny and Commonwealth of Pennsylvania, being Lots Nos. 34 and 35 in the Central Plan of Lots as laid out by George A. Uhlinger, et al. and recorded in the Department of Real Estate Office of Allegheny County in Plan Book Volume 29, Pages 18 and 19.

PARCEL NO. ██████ and known as 733 Garfield Street, Springdale, PA 15144

BEING the same premises which Mario J. Cappella and Kim S. Cappella, husband and wife, by Deed dated 02/10/1999 and recorded 03/01/1999 in the Department of Real Estate Office of Allegheny County in Deed Book Volume 10417, Page 165, granted and conveyed unto Sean S. Puz.

NOTICE - THIS DOCUMENT DOES NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957 P.L., 984 as amended, and is not intended as notice of unrecorded instruments, if any).

NOTICE - THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THE NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, ARE FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT TO PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THAT THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE

SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF
THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS
INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE
SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is ▇▇▇▇ MERS. **First Niagara Bank, N.A.**
,
("Lender") is organized and existing under the laws of **the United States**                        , and has an address of **726 Exchange Street, Suite 618, Buffalo, NY  14210**
. Borrower owes Lender the principal sum of **One Hundred Twenty Two Thousand Seven Hundred Thirty Five And Zero/100**
Dollars (U.S. **$122,735.00**        ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **September 01, 2045** . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Allegheny**                                    County, Pennsylvania:
**See attached Schedule A**

which has the address of **733 Garfield Street**                                              [Street]
**Springdale**                          [City], Pennsylvania **15144**          [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 8/02
VMP4N(PA) (1302)
Page 2 of 12

granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 3 of 12

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
<u>Third</u>, to interest due under the Note;
<u>Fourth</u>, to amortization of the principal of the Note; and
<u>Fifth</u>, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 4 of 12

all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 5 of 12

failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

    **(a)   Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b)   Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 6 of 12

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the
Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence,
or the purchaser or grantee does so occupy the Property but his or her credit has not been
approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in
full, but Lender does not require such payments, Lender does not waive its rights with respect to
subsequent events.

**(d)  Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary
will limit Lender's rights, in the case of payment defaults, to require immediate payment in full
and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure
if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not
determined to be eligible for insurance under the National Housing Act within 60 days from the
date hereof, Lender may, at its option, require immediate payment in full of all sums secured by
this Security Instrument. A written statement of any authorized agent of the Secretary dated
subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the
Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this
option may not be exercised by Lender when the unavailability of insurance is solely due to
Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in
full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.
This right applies even after foreclosure proceedings are instituted. To reinstate the Security
Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account
current including, to the extent they are obligations of Borrower under this Security Instrument,
foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with
the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the
obligations that it secures shall remain in effect as if Lender had not required immediate payment in
full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted
reinstatement after the commencement of foreclosure proceedings within two years immediately
preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude
foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority
of the lien created by this Security Instrument.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of
payment or modification of amortization of the sums secured by this Security Instrument granted by
Lender to any successor in interest of Borrower shall not operate to release the liability of the original

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 7 of 12

Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 8/02
VMP4N(PA) (1302)
Page 8 of 12

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 9 of 12

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

21. **Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

22. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider          ☐ Graduated Payment Rider

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 10 of 12

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Borrower**

_____          8/17/15
Kevin L Jansen                            Date
                                          (Seal)

_____          8/17/15
Kayla L Boyd                              Date
                                          (Seal)

_____          _____
                                          Date
                                          (Seal)

_____          _____
                                          Date
                                          (Seal)

☐   Refer to the attached *Signature Addendum* for additional parties and signatures.

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 11 of 12

**Acknowledgment**
State of **PA**
County of **Allegheny**
On **August 17, 2015**   , before me,    *a NoTary PuBLic*     , the
undersigned officer, personally appeared
**Kevin L Jansen and Kayla L Boyd**

known to me, (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within
instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Debra D. Patti, Notary Public
Crafton Boro, Allegheny County
My Commission Expires Sept. 5, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
*Notary Public*

*My commission expires:*
**Certificate of Residence**
I,    *DEBRA D PATTI*     , do hereby certify that the
correct address of the within-named Mortgagee is 1901 E Voorhees Street, **Suite C**, Danville, IL 61834.

Witness my hand this **17th** day of **August, 2015**   .

_____
Agent of Mortgagee

Loan origination organization **First Niagara Bank, N.A.**
NMLS ID ■■■
Loan originator **Jeani Bello**
NMLS ID ■■■

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1302)
Page 12 of 12

**Allegheny County**

**Jerry Tyskiewicz**
**Department of Real Estate**
**Pittsburgh, PA 15219**

**\*\*\*\*   Electronically Filed Document   \*\*\*\***

---

## \*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\*

Document Number:  2016-37992

Recorded As:      ERX-MORTGAGE ASSIGNM

Recorded On:      June 07, 2016

Recorded At:      09:07:15 am

Number of Pages: 3

Book-VI/Pg:       Bk-M  VI-46534  Pg-86

Recording Fee:    $162.00

Parties:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC NOM

   WELLS FARGO BANK N A

Receipt Number:  3086129

Processed By:    Al Matthews

I hereby certify that the within and foregoing was recorded in the Department of Real Estate's Office in Allegheny County, PA

## \*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\*



eRecorded  *Jerry Tyne*

Jerry Tyskiewicz, Director
Rich Fitzgerald, County Executive

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**SUITE 200**
**EAGAN, MN 55121**

AND WHEN RECORDED MAIL TO:
**WELLS FARGO BANK, N.A.**
**MAC: N9289-016**
**PO BOX 1629**
**EAGAN, MN 55121-4400**
**ATTN: ASSIGNMENT TEAM**

### ASSIGNMENT OF MORTGAGE

MIN:▮▮▮▮▮▮▮▮▮▮MERS Phone #: 1-888-679-6377
For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NIAGARA BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** , P.O. BOX 2026 , FLINT, MI 48501-2026 , by these presents does convey, assign, and transfer and set over to: **WELLS FARGO BANK, N.A.** , 1 HOME CAMPUS , DES MOINES, IA 50328 , the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$122735.00** is recorded in the State of **PENNSYLVANIA** , County of Allegheny Official Records, dated **08/17/2015** and recorded on **08/19/2015** , as Instrument No. **2015-62316** in Book No. **M 45507** , at Page No. **489** .
Original Mortgagor: **KEVIN L JANSEN AND KAYLA L BOYD**
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NIAGARA BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS**
Property Address: 733 GARFIELD STREET SPRINGDALE, PA 15144
Municipality: Borough of SPRINGDALE   Ward:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026
Date: 06/07/2016

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NIAGARA BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS**
By:

*T3. [signature]*

BHAVDIP CHHOTALAL CHAUHAN, Assistant Secretary

STATE OF MN
COUNTY OF Dakota } S.S.

On 06/07/2016 , before me **SCOTT GERALD HEURKINS** , Notary Public, personally appeared **BHAVDIP CHHOTALAL CHAUHAN** , Assistant Secretary of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NIAGARA BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS** personally known to me (or proved to me on the basis of satisfactory evidence), to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument, the person or entity upon behalf of which the person acted, executed the instrument.
Witness my hand and official seal.

*[signature]*

SCOTT GERALD HEURKINS,,Notary Public
Commission #: 20324546
My Commission Expires: 01/31/2017

SCOTT GERALD HEURKINS
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2017

I do certify that the precise address of **WELLS FARGO BANK, N.A.** is 1 HOME CAMPUS , DES MOINES, IA 50328

Attested By:

*T3. [signature]*

eRecorded